UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE L. PARRA, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| OCWEN LOAN SERVICING, LLC, | ) ) ) |
| Defendant. | ) |

No. 18-cv-05936

Hon. Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Jose Parra initially filed this class-action complaint against Ocwen Loan Servicing, LLC in the Circuit Court of Cook County, advancing a number of state law claims based on Ocwen's alleged failure to apply $773.05 in unapplied funds to the outstanding principal balance on Parra's mortgage *prior* to filing for foreclosure. *See generally* R.1-1,[1] Notice of Removal at Exh. A, Compl. Invoking diversity jurisdiction, Ocwen removed the case to federal court.[2] *See generally* R.1, Notice of Removal. Now, Ocwen moves to dismiss the case, primarily because the complaint fails to adequately state a claim. Fed. R. Civ. P. 12(b)(6). R. 15, Mot. to Dismiss. For the following reasons, Ocwen's motion to dismiss is granted.

---

[1]Citations to the record are noted as "R." followed by the docket number.
[2]This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Parra is an Illinois citizen, Ocwen is incorporated in Delaware with a principal place of business in Florida, and the amount in controversy requirement is met because Parra seeks an injunction related to a foreclosure action on property in which he has $114,000 in equity. *See generally* Compl; Notice of Removal; *see also Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (holding that cases in which injunctive relief is sought should use the value of the object of litigation to measure the amount in controversy).

## I. Background

For purposes of this motion, the Court accepts as true the factual allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Documents attached to a complaint are considered part of the complaint for all purposes. Fed. R. Civ. P. 10(c).

In 2006, Parra obtained a $420,000 home mortgage through Guaranteed Rate. Compl. ¶ 6; *id.* at Exh. D. As part of that transaction, Parra executed a Mortgage (consisting of Uniform and Non-Uniform Covenants), an Adjustable Rate Note, an Adjustable Rate Rider, and an Endorsement Allonge of the Note (all together, "the Mortgage Contract"). Compl. ¶ 6; *id.* at Exhs. A-D. In 2012, Ocwen was designated as the loan servicer, and became responsible for the collection, allocation, and entry of Ocwen's mortgage payments, principal, interest, unapplied funds, and suspension of account funds. *Id.* ¶ 8. In 2014, the mortgage was assigned to Deutsche Bank National Trust Company with Ocwen still as the loan servicer. *Id.* ¶¶ 7-8. At some point after that, Parra made a partial mortgage payment of $773.05, which Ocwen held in an unapplied funds or suspense account. *Id.* ¶ 26.

In July 2016, Deutsche filed for foreclosure against Parra in state court. R.15-1, Mot. to Dismiss, Exh. 1 at 2. In his affirmative defenses to Deutsche's foreclosure complaint, Parra asserted that he does not owe Deutsche the money claimed because it "failed to properly reduce the outstanding loan principal by the amount of the 'unapplied funds' prior to its filing … and in so doing increased the interest calculated due and penalties assessed during the term of the loan." R.15-2, Mot. to Dismiss, Exh. 2 at ¶¶ 47-48. Specifically, Parra cited to Section 1 of the Uniform Covenants in the

2

Mortgage Contract, *id.* at ¶ 39, which says, "Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure[,]" Compl., Exh. A at 3.

Shortly after, in mid-April 2017, Parra filed a motion to pursue a class action representing homeowners against whom Deutsche had instituted foreclosure proceedings without applying "unapplied funds" to the outstanding principal balance. *See generally* Compl., Exh. 3. After hearing oral argument, the state court denied the motion in September 2017, holding that "filing a foreclosure complaint is not a foreclosure under the contract; a foreclosure occurs at the time of judgment." *Id.* at Exh. 6. Parra then filed a motion to reconsider. *Id.* at Exh. 7. He also sought leave to amend his affirmative defenses, to include the argument that the failure to apply the "unapplied funds" violated an Illinois mortgage-foreclosure statute, 735 ILCS 5/15-1504(J). *Id.* at Exh. 10.

In April 2018, the state court denied Parra's motion to reconsider (but granted the motion to amend). *Id.* at Exhs. 9 (p. 3), 10. In doing so, the state court examined the case law cited by Parra and Deutsche and found "little support for the position that the commencement of 'the process of foreclosure' in fact creates a foreclosure." *Id.* at Exh. 9 (p. 2). Thus, it held that Parra's "Motion for Reconsideration fail[ed] to meet its burden of showing an error of law." *Id.* at 3.

A few months later, in July 2018, Parra filed this case in state court against *Ocwen*, the loan servicer. *See generally* Compl. Ocwen initially attempted to consolidate this suit with the underlying foreclosure action, but local Cook County Circuit Court rules require that proposed class actions be heard by a separate judge. Mot. to Dismiss at 8. Ocwen then removed the case to this Court based on diversity jurisdiction. *Id.*

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

In the first count of Parra's complaint, he alleges that Ocwen breached the Mortgage Contract "by not complying with the servicing requirement … which requires that unapplied funds be applied to the outstanding principal balance under the Mortgage immediately prior to foreclosure, or that the unapplied funds be returned to the borrower." Compl. ¶ 19. Under the choice of law provision in the Contract, the governing law is "federal law and the law of the jurisdiction in which the Property is located[,]" which in this case is Illinois. Compl., Exh. A at 10. Under Illinois law, a plaintiff must establish four elements to make out a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting injury to the plaintiff. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (2004)).

Ocwen argues that Parra failed to adequately allege a valid claim because he "confuses the concept of a foreclosure *lawsuit* with the *foreclosure itself*, which is the outcome of that lawsuit." Mot. to Dismiss at 9 (emphasis in original).[4] When parties

---

[4]In its reply, Ocwen relies on an unpublished order by the Illinois Appellate Court, *Wilmington Sav. Fund Soc'y, FSB v. Morris*, 2018 IL App (2d) 170116-U. R. 27, Def.'s Reply at 2-3. But Illinois Appellate Court orders filed under Illinois Supreme Court Rule 23 may

5

dispute the meaning of a contract term, as they do here, Illinois law requires the Court to look to the "four corners" of the contract. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). "If the language of a contract appears to admit of only one interpretation, the case is indeed over." *Bourke*, 159 F.3d at 1036. In other words, the Court must determine the intent of the parties based on the plain language of the Mortgage Contract while avoiding, when possible, rendering any provision superfluous. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014); *Hot Light Brands, L.L.C. v. Harris Realty Inc.*, 912 N.E.2d 258, 263 (Ill. App. Ct. 2009).

Here, the key provision is in Section 1 of the Uniform Covenants. The section requires that "[i]f not applied earlier, [unapplied] funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure." Compl., Exh. A at 3. Parra relies on two Northern District of Illinois cases, *Moore v. Loma Mortg. USA, Inc.*, 814 F. Supp. 741 (N.D. Ill. 1993) and *Lomas & Nettleton Co. v. Humphries*, 703 F. Supp. 757 (N.D. Ill. 1989), to argue that "the word 'foreclosure' refers to the proceeding itself, an action for foreclosure, and not to its resolution." R. 25, Pl.'s Resp. Br. at 3. But those cases do not address the issue presented in this one. Both *Moore* and *Lomas* interpret the term "foreclosure" as used in Section 15-1602 of the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1602. *See Moore*, 814 F. Supp. at 743; *Lomas*, 703 F. Supp. at 758. That statutory provision deals with how a

---

not be cited as precedent by any party (except in very limited circumstances not applicable here). *See* Ill. Sup. Ct. R. 23(e). So this Court cannot consider *Wilmington*.

borrower can reinstate a mortgage after defaulting on it. 735 ILCS 5/15-1602. There is nothing in particular about that general context or the specific statutory text that would make it necessary to adopt the definition of "foreclosure" in that provision to the specific interpretive mission in this case. Here, the Court must interpret the word "foreclosure" in the Mortgage Contract when it comes to applying unapplied funds to the outstanding principal.

To aid in that interpretative task, the Court looks to the context of "foreclosure" in Section 1 of the Uniform Covenants. When there is a question of ambiguity in a contract, "Illinois law requires that we do not look at the contested language in isolation. We 'examine [the contract] as a whole, giving effect, to the extent possible, to all contractual provisions.'" *Bourke*, 159 F.3d at 1038 (quoting *O'Rourke v. Access Health, Inc.*, 668 N.E.2d 214, 220 (Ill. App. Ct. 1996)). When viewed in context, it is plain that the parties distinguished between a judicial foreclosure proceeding and the *end result* of that proceeding, that is, entry of a judgment of foreclosure. For example, Section 22 of the Non-Uniform Covenants in the Mortgage Contract says, "failure to cure the default … may result in … *foreclosure by judicial proceeding* and sale of the Property. This notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the *foreclosure proceeding* the non-existence of a default or any other defense of Borrower to acceleration and foreclosure." Compl., Exh. A at 11 (emphases added). As the emphasized text demonstrates, this provision explicitly sets forth a remedy available to the Borrower during a "foreclosure proceeding" to prevent a judgment of "foreclosure." *See id.* The use of "foreclosure"

and "foreclosure proceeding" as distinct terms in the Mortgage Contract is a strong textual clue that filing the foreclosure *proceeding* is different from the ultimate *foreclosure*.

Reading Sections 5 and 22 together leads to the same conclusion. Under Section 5, a lender is entitled to a homeowner's insurance payout in certain circumstances, including "if [the] Lender acquires the Property under Section 22 … ." Compl., Exh. A at 5-6. As previously discussed, Section 22 provides that failure to cure a default may result in "foreclosure by judicial proceeding and sale of the Property." *Id.* at 11. As a defense, a borrower may "assert in the foreclosure proceeding the non-existence of a default or any other defense … ." *Id.* Because a foreclosure proceeding, in its pendency, comes *before* the lender's acquisition of the property, Section 5 necessarily implies a distinction between the final act of foreclosure and the earlier institution of judicial foreclosure proceedings. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786-87 (7th Cir. 2015) (where the lender had not acquired the property through foreclosure, and "[i]n light of the bargained-for remedies for default contained in section 22 of the mortgage agreement, and the presumption against superfluity as applied to section 5," the plaintiff stated a plausible claim that applying the insurance payout to the loan balance was not a contractually permitted response to a default).[5] So Sections 5 and 22 use the term "foreclosure" in a way that must mean the end-result of the foreclosure proceeding.

---

[5]Sections 1, 5, and 22 of the mortgage contract in *Avila*, 801 F.3d 777, are nearly identical to the corresponding provisions in this case. *See* Brief for Plaintiff-Appellant at Exh. A, 2014 WL 3421290, *Avila*, 801 F.3d 777 (No. 14-1949).

8

Applying that definition to Section 1, the section only requires Ocwen to apply "unapplied funds" to the outstanding principal balance before it obtains the foreclosure judgment, not before it starts the foreclosure *proceeding*. There is no valid breach of contract claim here.

With that interpretation of Section 1 in place, Ocwen is right that, because "[a]ll of Parra's claims hinge on th[e] erroneous argument" that Ocwen was legally required to apply the funds before instituting the foreclosure proceeding, all of the remaining claims must also be dismissed. Mot. to Dismiss at 8-11. Counts 2 through 7 of the complaint, *see* Compl. ¶¶ 23-56, necessarily fail absent a plausible claim that Ocwen was legally required to apply the "unapplied funds" before filing for foreclosure. Without a breach of the Mortgage Contract in this case, there cannot possibly be unfair, deceptive, or fraudulent conduct; unjust enrichment; or an injunction or declaratory judgment in Parra's favor. The same goes for Parra's claim that Ocwen provided an inaccurate amount for "the current unpaid balance" in the foreclosure complaint. *See* Compl. ¶¶ 23-26; 735 ILCS 5/15-1504(J). Because the Mortgage Contract determines the calculation of the "current unpaid loan balance," and because the Contract does not require Ocwen to apply the funds before filing the foreclosure suit, Parra is not entitled to relief.[6]

---

[6]Ocwen raises other merits-based arguments—on personal jurisdiction, res judicata, and the Anti-Injunction Act—as alternative grounds to dismiss. There is no need to address those arguments in light of Parra's incorrect interpretation of the Mortgage Contract.

9

## IV. Conclusion

Ocwen's motion to dismiss is granted and the complaint is dismissed. The dismissal is with prejudice because Parra does not suggest that there is a way to salvage it by way of amendment, and indeed, the circumstances—a straightforward interpretation of a contractual provision—also suggest that there is no way an amendment can fix the problem in Parra's theory of liability. The status hearing of October 8, 2019 is vacated.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019